**John Joseph WALSH, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19950.**

United States Court of Appeals Ninth Circuit.

Jan. 11, 1967.

Rehearing Denied Feb. 13, 1967.

Paul A. Renne, San Francisco, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Robert J. Timlin, Asst. U. S. Atty., for appellee.

Before MERRILL, KOELSCH and BROWNING, Circuit Judges.

PER CURIAM:

Appellant was charged with violating the Dyer Act, 18 U.S.C. § 2312, by transporting an automobile from New York City to Los Angeles, knowing it to have been stolen. The uncontradicted evidence established that appellant rented the vehicle from a car rental agency in New York City and drove it to Los Angeles where he was arrested. The sole issue was whether appellant acted with criminal intent.

 Appellant's principal contentions on appeal relate to admission in evidence of incriminating statements made in absence of counsel. Appellant had been advised of his right to remain silent and of his right to consult counsel. Under the circumstances of this case, for the reasons set forth in Payne v. United States, 340 F.2d 748 (9th Cir. 1965), the statements were not rendered inadmissible by Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964). While the warnings given were insufficient to meet the standards of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), trial here commenced September 1, 1964, and such standards are not to be retroactively applied. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

In closing argument counsel for the Government stated:

"No one has shown a bit of evidence, particularly the defendant, that the defendant took one step to return the car."

Appellant asserts that this remark amounted to a comment on his failure to take the stand and as such constituted prejudicial misconduct.

 The remark as a whole, while unfortunately and most ineptly phrased, was addressed to appellant's failure to establish a particular fact (a perfectly legitimate subject of comment) rather than to his failure to take the stand himself. Any improper collateral innuendo was, in our judgment, cured by the court's charge to the jury that the defendant need not testify and that no presumption or inference of any kind might be raised or drawn from such failure.

 After the jury had been deliberating for close to six hours it reported itself unable to agree upon a verdict. The court nevertheless sent the jury back for further deliberation. Appellant asserts that the manner in which this was done was coercive. We cannot agree. We regard Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), the case upon which appellant relies, as distinguishable. There—as appears from the dissenting opinion in the Court of Appeals [117 U.S.App.D.C. 346, 330 F.2d 220 (1964)]—the trial judge had bluntly declared: "Now I am not going to accept this. You have got to reach a decision in this case." Here the jury was not told that it must reach a verdict. Nor were the minority members of the jury singled out for a lecture, or urged to defer to the views of the majority. The jury was simply told to keep trying.

Judgment affirmed.

BROWNING, Circuit Judge (dissenting):

As the court notes, the sole issue was whether appellant acted with criminal intent. The testimony was brief, requiring less than one trial-day. The case was submitted to the jury at 11:55 a. m. At 3:13 p. m. the jury requested additional instructions on intent. At 3:31 p. m., at the request of defense counsel, the jury was recalled and was further instructed, at length, on this issue. One of the jurors (by his questions) indicated partic-

ular doubt as to the sufficiency of the evidence. At 4:45 p. m. the jury asked for a reading of the testimony of a key witness on intent.

At 5:45 p. m. the jury sent the court a note reading:

"We the jury find it impossible to reach a verdict in this case."

The court summoned the jury, and the following transpired:

"THE COURT: I don't know just exactly what that message means. I don't think I have ever, in 19 years, received a note just like that.

The bailiffs will take you to dinner, and when 9:00 o'clock comes, why, you will be taken to a hotel, if the verdict hasn't been reached.

I am sorry, I have a dinner engagement, and I am going to it.

Now, if you reach a verdict, I will come in from Pasadena to receive it.

The bailiff will make the arrangements to take the jury to dinner.

If there is any reasonable doubt in your minds, that man is entitled to your verdict of not guilty. He is entitled not to have to run the gauntlet twice.

But if there isn't any reasonable doubt, from the evidence—I heard the testimony but I haven't looked at any of the documentary evidence, so I can say I don't know what the evidence in the case is.

If there is no reasonable doubt, the Government is entitled to a verdict of conviction. Both sides are entitled to the same fair trial at your hands.

You may now retire to continue your deliberations.

The clerk will enter an order directing the bailiffs to take you to dinner now at Government expense, and to take you to your hotel for the night by 9:00 o'clock, if you have not reached a verdict at that time.

If I am unable to get back here, the clerk will furnish you with an envelope for you to return a sealed verdict. And if you return a verdict before 9:00 o'clock, then you may seal it, put it in an envelope, and return tomorrow morning at 9:30, and we will open the verdict at that time." [1]

---

1. The balance of the colloquy between the court and the jury was as follows:

"JUROR HINSCH. May we call home?

THE COURT: Yes. The bailiffs will call home for you. You may not call, but the bailiffs will call home for you. I think you might do that when you know what your situation is. The bailiffs will make a call for you.

If you have parking problems, why the marshal will help them take care of those situations.

The court will be in recess, subject to call, I will ask the alternates to remain in attendance, if they can. Can you, until 9:00 o'clock?

ALTERNATE TAYLOR: Your Honor, I also have a dinner engagement, and company coming to my house.

THE COURT: It will be pretty late.

JUROR TAYLOR: Keep them waiting for dinner.

THE COURT: Do you expect to cook the dinner?

JUROR TAYLOR: I think I will have to because my husband doesn't cook.

ALTERNATE TEAMAN: I can stay until 9:00 o'clock, but no later.

THE COURT: 9:00 o'clock. We all go to bed at 9:00 o'clock. I have discovered over the years that we don't do much after 9:00 o'clock in these matters. And oftentimes things look different to you when you sleep on them.

I sleep on many things. Sometimes it takes a judge longer than this to make up his mind. So I am not criticizing you. I sleep on many cases. Sometimes the next morning, why, lightness comes to me—or, at least, doubt has been relieved.

Is there any objection to excusing Mrs. Taylor at this time? And Miss Teaman can remain on until 9:00 o'clock.

GOVERNMENT COUNSEL: The Government has no objection, your Honor.

DEFENSE COUNSEL: The defendant has no objection, your Honor.

THE COURT: Very well. You may be excused, Mrs. Taylor. And Miss Teaman may be excused, and counsel may be excused now until 7:30.

At 9:20 p. m. the jury returned a verdict of guilty.

The court was not required to accept at once the jury's statement that it could not agree, but could insist that the jury deliberate further. See, e. g., DeVault v. United States, 338 F.2d 179, 182–183 (10th Cir. 1964); Mills v. Tinsley, 314 F.2d 311, 312 (10th Cir. 1963); 5 Wharton, Criminal Law & Procedure 300 (Anderson ed. 1957).

The difficulty with the court's response was that it implied that the jury must reach a verdict, either for the defendant or for the government. It may therefore have exerted a coercive influence upon individual jurors to relinquish their personal views in the interest of unanimity.

A similar situation was before the Supreme Court in Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059 (1965). There, as here, the trial court rejected the jury's announcement that it could not reach a decision the jury, in effect, that the case must be decided (see 330 F.2d at 221 n. 2). The Solicitor General conceded "the principle that jurors may not be coerced into surrendering views conscientiously held." The Supreme Court concluded that "in its context and in all the circumstances the judge's statement had the coercive effect attributed to it," and reversed *per curiam*.

It is clear from *Jenkins*, and prior authority, that forbidden coercion exists whenever pressure to reach agreement is exerted upon the jury, unless it is accompanied by a clear and unequivocal reminder of the overriding obligation of each juror to adhere to his own conscientious convictions and to refrain from joining in a verdict merely because the juror is in a minority, or stands alone. In United States v. Rogers, 289 F.2d 433 (4th Cir. 1961), cited with approval in *Jenkins*, the court stated that the "Allen charge" (Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528 (1896)), which contains language suggesting the desirability of agreement, approaches the limit of acceptability,[2] and that the charge would constitute reversible error "if it were stripped of its complementary reminder that jurors were not to acquiesce in the views of the majority or to surrender their well-founded convictions conscientiously held."[3] 289 F.2d at 435. See also United States v. Smith, 353 F.2d 166, 168 (4th Cir. 1965); Powell v. United States, 297 F.2d 318, 321 (5th Cir. 1951); Rhodes v. United States, 282 F.2d 59, 62–

The court will be in recess, subject to call. I will inform the bailiffs where they can reach me by telephone if you arrive at a verdict. I will come in from Pasadena to receive it, if it is at a seasonable hour. If not, you can seal it, and be able to go home at 9:00 o'clock.

ALTERNATE TEAMAN: Will it be necessary for the alternate to be locked up?

THE COURT: No. You won't be.

ALTERNATE TEAMAN: Thank you.

THE COURT: You labor under the same admonition that I have given throughout the trial.

ALTERNATE TEAMAN: You want us back here at 7:30?

THE COURT: 7:30. Thank you.

The court will be in recess, subject to call."

2. The *Allen* charge has been severely criticized, even when accompanied by an admonition against surrender of individual views. Williams v. United States, 119 U.S.App.D.C. 190, 338 F.2d 530, 533 (1964); Green v. United States, 309 F.2d 852, 854 (5th Cir. 1962); Huffman v. United States, 297 F.2d 754, 759 (5th Cir. 1962) (Brown, J., dissenting); Andrews v. United States, 309 F.2d 127, 129 (5th Cir. 1962) (Wisdom, J., dissenting); Thaggard v. United States, 354 F.2d 735, 739 (5th Cir. 1965); (Coleman, J., concurring); Note, 31 U.Chi.L.Rev. 386 (1964); Note, 31 Tulane L.Rev. 214 (1959). Cf. United States v. Kahaner, 317 F.2d 459, 484 n. 18 (2d Cir. 1963).

3. *Rogers* rests upon two early decisions of this court, Peterson v. United States, 213 F. 920, 925 (9th Cir. 1914); and Quong Duck v. United States, 293 F. 563, 565 (9th Cir. 1923) (concurring opinion). See 289 F.2d at 437 n. 8.

63 (4th Cir. 1960); cf. United States v. Kenner, 354 F.2d 780, 783–784 (2d Cir. 1965), and cases cited. Such a charge is permissible only "so long as it makes plain to the jury that each member of the jury has a duty conscientiously to adhere to his own honest opinion and avoids creating the impression that there is anything improper, questionable, or contrary to good conscience for a juror to cause a mistrial" (Thaggard v. United States, 354 F.2d 735, 739 (5th Cir. 1965)); for, "indeed, a mistrial is as much a part of the jury system as a unanimous verdict." Williams v. United States, 119 U.S.App.D.C. 190, 338 F.2d 530, 533 (1964).[4]

4. The government's argument that the error cannot be noticed because appellant failed to comply with Rule 30, Fed.R.Crim.P., is without merit. In Jenkins v. United States, 380 U.S. 445, 85 S.Ct. 1059 (1965), the defendant had not objected to the supplemental instruction. See 330 F.2d at 220. The same was true in United States v. Smith, 353 F.2d 166, 168 (4th Cir. 1965). See also Powell v. United States, 347 F.2d 156, 158 (9th Cir. 1965).