**Jeff WHITLOCK, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 689–69.**

United States Court of Appeals,
Tenth Circuit.

July 27, 1970.

Robert L. Pitler, Denver, Colo. (Allan J. Moll and Carl J. Nemelka, Salt Lake City, Utah, with him on the brief) for appellant.

Pratt Kesler, Asst. U. S. Atty. (C. Nelson Day, U. S. Atty., and H. Ralph Klemm, Asst. U. S. Atty., on the brief) for appellee.

Before BREITENSTEIN, HILL, and SETH, Circuit Judges.

SETH, Circuit Judge.

On May 19, 1969, appellant, Jeff Whitlock, was charged with the interstate transportation of a woman for the purpose of prostitution in violation of 18 U.S.C. § 2421. Appellant entered a plea of not guilty and demanded a trial by jury. The trial was originally set for July 2, 1969, but on July 1, 1969, the Government asked for a continuance on the ground that a necessary witness could not be located. The trial court then gave the Government one week and ordered the Government to report to it within that time as to the whereabouts of the witness. After the expiration of the one-week period the Government advised the court that the witness had not yet been located. The court then granted the Government additional time to locate the witness. On August 27, 1969, the appellant filed a motion to dismiss the charge on the ground that the Government unnecessarily delayed in bringing the matter to trial, thereby denying appellant his right to a speedy trial in contravention of the Sixth Amendment to the Constitution of the United States and in violation of Rule 48(b), Fed.R. Crim.P. The case was then set for a jury trial on September 29, 1969, and came up for trial on September 30, 1969. Appellant's motion to dismiss for delay was heard and denied on that day, and the trial was commenced on October 1, 1969. He was found guilty and has taken this appeal.

The principal witness against the appellant was an eighteen year old woman whom it was charged appellant brought to Utah for the purposes of engaging in prostitution. This witness testified that appellant approached her on the streets of Seattle, Washington, and offered her $150.00 if she would show him around Seattle. She then testified that once she was in the car, appellant continued driving on through Oregon, then into Idaho, and finally to Salt Lake City, Utah, where she lived with the appellant, engaging in prostitution and turning over all of her earnings to him.

Appellant testified that he picked up this witness in Seattle, Washington, and took her back to his room. He further testified that while he and the witness were in his motel room he received a telephone call from someone in Salt Lake City, Utah, informing him of his son's illness and that he started to pack, whereupon she asked to go to Salt Lake City with him. The appellant's defense to the charge was that the purpose of the trip to Salt Lake City was to see his sick son.

█ The appellant's first contention reasserts the position taken in the court below that he was denied a right to a speedy trial in contravention of the Constitution of the United States and Rule 48(b), Fed.R.Crim.P. The appellant attempted to show in the court below that the four and one-half month delay between the indictment and the trial had a deteriorating effect on the appellant's health and nervous system and that it affected his memory of past events, thereby prejudicing his defense. The trial court held a hearing on this issue just prior to trial and concluded that the delay did not prejudice the appellant.

█ A review of the testimony elicited at the hearing on this issue adequately demonstrates that the trial court's finding was not erroneous. In a recent decision on the right to a speedy trial, we held that the lapse of time before trial must result in oppressive delay, harassment, discrimination, or prejudice to the defendant before the delay could be considered as an unconstitutional denial of the right to a speedy trial. Basker v. Crouse, 426 F.2d 531

(10th Cir. 1970). We cannot say under the circumstances of this case that the four and one-half months delay resulted in oppressive delay, harassment, discrimination, or prejudice to the defendant. The Government's motion was based on reasonable grounds, the inability to locate a necessary witness, and the delay was not unreasonably long. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627. See also, Webber v. United States, 395 F.2d 397 (10th Cir.); Hampton v. State of Oklahoma, 368 F.2d 9 (10th Cir.); Wood v. United States, 317 F.2d 736 (10th Cir.); Day v. Davis, 235 F.2d 379 (10th Cir.).

In the course of cross-examination of the Government's principal witness, the court did not allow the latitude that appellant's counsel expected. When the appellant's counsel attempted to ask the witness whether or not she understood the nature of the oath taken prior to testifying, the court interrupted, ruling such an inquiry irrelevant. Appellant's counsel then asked the name of the party with whom the witness was living while in Seattle and the court, after inquiry from the witness, instructed her that she did not have to answer on the ground that the information sought was immaterial. There were several other exchanges of this nature, culminating in appellant's counsel making a motion for a mistrial. The appellant contends that the limitations placed on the extent of cross-examination created reversible error.

█ █ The record does not show such error. As this court pointed out in Foster v. United States, 282 F.2d 222 (10th Cir.), Darby v. United States, 283 F.2d 896 (10th Cir.), and in McManaman v. United States, 327 F.2d 21 (10th Cir.), the proper limits of cross-examination lie within the discretion of the trial court, and the exercise of that discretion will not be upset unless it was clearly prejudicial. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624. A close examination of the record here leads us to conclude that the limitations were not clearly prejudicial. Subjects sought to be pursued were irrelevant. The witness had testified that she had been a prostitute for several years, was so working when she met appellant, and had so worked for two different men in Seattle.

█ At the close of the prosecution's case, the appellant moved for a directed verdict of acquittal on the grounds that the Government failed to prove that the transportation took place on September 12, 1968, as charged in the indictment, but rather that the trip took place on the 8th or 9th of September. The appellant now contends that the court erred in refusing to direct a verdict of acquittal. In answer to this argument it is sufficient to point out the fact that the record contains testimony showing that appellant and the principal witness were traveling through Idaho on the date charged. On that date appellant accidentally drove his car off the road. An Idaho State patrolman who investigated the accident appeared at the trial and identified both the appellant and the witness. He further testified that the accident occurred on September 12, 1968. Moreover, it is sufficient if the evidence shows that the crime occurred on a day that is in close proximity to the date alleged in the indictment, where time is not an essential element of the offense. See United States v. Gammill, 421 F.2d 185 (10th Cir.); Weatherby v. United States, 150 F.2d 465 (10th Cir.).

█ The appellant urges that it was reversible error for the court to fail to comply with the portion of Rule 30, Fed.R.Crim.P., on instructions which reads: "The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, * * *." The appellant does not point in his brief or argument to any particular prejudice he may have suffered by the court's failure to comply with the rule. He instead urges that it is "absolute," and that he was " * * * deprived of his right to have instructions which stated the law of the case to be presented to the jury, and he was hampered in mak-

ing a complete record." These arguments do not actually relate to the trial court's proposed action on requested findings. No objection to the procedure was made during the course of the trial, and appellant does not state that it may have adversely affected his argument to the jury. The issues were few and there were but two clear-cut theories of the case. We cannot say that the procedure followed created a reversible error. We considered an aggravated set of facts in the civil case of Downie v. Powers, 193 F.2d 760 (10th Cir.), which are not considered comparable to the case before us. The standard usually described is whether the party was unduly and unfairly prevented from making his argument to the jury or was substantially misled by the court's actions or inaction in formulating his arguments. The principal cases on the point, in addition to the Downie case, include Martin v. United States, 404 F.2d 640 (10th Cir.); Dunn v. St. Louis-San Francisco Ry. Co., 370 F.2d 681 (10th Cir.); Wright v. United States, 339 F.2d 578 (9th Cir.); Watada v. United States, 301 F.2d 869 (9th Cir.); Ross v. United States, 180 F.2d 160 (6th Cir.); Steinberg v. United States, 162 F.2d 120 (5th Cir.), and United States v. Crescent-Kelvan, 164 F.2d 582 (3d Cir.). These cases concern instances where prejudice as to a specific matter, point, or issue was asserted, and require such be demonstrated. In the case before us, as indicated above, no such specific prejudice is asserted as to particular requested instructions, and we find no reversible error.

As to the issues related to the purpose of the trip to Salt Lake City, the appellant requested the court to give an instruction to the effect that in order to convict, the Government must prove that the trip was taken with the dominant or primary purpose of prostitution. The court refused to give the instruction and counsel for the appellant excepted. Some time later and during its deliberations, the jury sent a note to the court requesting that the appellant's testimony be read to them. The court refused this request, but gave the jury the following supplemental instruction:

"Now, the defense raises the point that he had a sick son, that his son was very sick, hospitalized or about to be hospitalized, in the hospital. I don't remember whether he was already there, whether he was about to be up at the LDS Hospital. So they say that was his purpose. That is what the defense says: that was his purpose.

"Now, I want to say this to you, ladies and gentlemen of the jury: There may be two or more purposes of the trip, one perfectly legitimate, like coming to Salt Lake to see his sick son in the LDS Hospital, the other unlawful, like bringing a girl down here to put her in prostitution. If one of the dominant purposes of interstate transportation of the woman or girl is that she may engage in prostitution, which is forbidden by the Act, it is a violation of the Act, even though another purpose of interstate transportation may have a legitimate purpose, namely, coming to see his son.

■ This supplemental instruction covered the dominant purpose issue previously omitted and, together with those previously given, fairly treat the defendant's theory and the issues actually developed at the trial.

■ The appellant also objects, however, to the language of the supplemental instruction as given. However, the language used is in accord with the guidelines laid down by this court in Long v. United States, 160 F.2d 706 (10th Cir.), and in United States v. Tyler, 424 F.2d 510 (10th Cir.). See also, DeVault v. United States, 338 F.2d 179 (10th Cir.). It does not assume facts not in evidence or that the trip was for an illegal purpose but presents the alternative theories of the case.

■ The appellant's final objection that the court erred in giving any supplemental instruction is without merit. Whether or not additional instructions of this nature should be given is within

the sound discretion of the trial court, and unless that discretion is clearly abused, there are no grounds for reversal on appeal. DeVault v. United States, 338 F.2d 179 (10th Cir.).

 The appellant's last assignment of error charges that the conduct of the trial judge prevented the appellant from getting a fair trial. Appellant points out the facts that the trial judge often interrupted defense counsel and that at the close of the principal witness's testimony, the judge commented on the pathetic nature of this witness and indicated that the court would do what it could to restore her to useful citizenship. The court said:

"What I have in mind is that we have to deal with a lot of people who are unfortunate, in unfortuante circumstances, some of them accused of crime and some of them not, some of them who are prisoners, some of them who are not, and we have some facilities here through the court for assisting people, giving people some assistance, putting them back on the right path again maybe, at any rate, seeing they have a roof over their heads and seeing that they have something to eat, seeing that they get medical and hospital care if they need it.

"Now, this is a most unfortunate girl. I want to see what we can do after the trial is over."

In considering this statement about the witness made in the presence of the jury, it must be considered that the witness was then appearing a year after charge, and in view of her work and ac- the events which were the basis for the tivities before the incidents. Under the circumstances, we cannot say that the judge's statement served to prejudice the defendant or unduly hamper his defense Johnson v. United States, 356 F. 2d 680 (8th Cir.); Woodring v. United States, 311 F.2d 417 (8th Cir.); Zebouni v. United States, 226 F.2d 826 (5th Cir.).

 The appellant also urges that the trial court was unduly severe with his counsel during trial in the course of rulings on objections, and in one instance threatened contempt and thereby prevented a fair trial. The record shows that the appellant's trial attorney was severely rebuffed as to several points and objections. This certainly caused the attorney some disappointment and perhaps discomfort, but this cannot be said to have interfered with the fairness of the trial.

Affirmed.